NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—February, June, 1885.

SOLOMONS *v.* KURSHEEDT.

*In the matter of the judicial settlement of the account of* MANUEL A. KURSHEEDT, *as executor of the will of* MOSES SOLOMONS, *deceased.*

The statute does not prescribe any special form to be adopted by an executor in making up his account. Such a paper should contain a clear

and definite statement of his dealings with his testator's estate, so that it can be made the subject of intelligent objections.

An inventory, made and filed by an executor, of the assets of his decedent's estate, has not the effect of binding, even presumptively, his successor in office.

K., who, at one time, qualified as executor of the will of each of two decedents, whose respective testamentary provisions were in direct antagonism, cited all persons interested in either of the estates to attend the judicial settlement of his account as representative of one thereof, and applied to the court for instructions as to the proper mode of presenting the account.—

Held, that such instructions should not be given, but that the executor should, in the first instance, solve for himself the problem which confronted him, leaving it to those interested to raise desired issues by the interposition of suitable objections.

Testator, by his will, executed in 1881, appointed his mother, S., executrix, and two others, F. and M., executors of his will, giving them the residue of his estate, in trust to retain the same, or convert it and invest the proceeds, and pay the income of all or any part thereof to S. for life, with remainder over; further directing his executors, at any time, upon his mother's written request, "unless declared by her family physician and two other trustworthy doctors to be mentally unsound," to pay and deliver to her any part, not exceeding one half, of the principal, in absolute ownership. This latter provision was, by a codicil, extended to include the entire estate. S., who alone qualified as executrix, shortly after receiving letters executed, with the knowledge of F. and M., a written instrument, declaring her election, in pursuance of the power vested in her, to take and hold in absolute ownership, all testator's estate, with certain exceptions, delivered the same to M., and thereafter died, leaving a will of which she appointed M. executor. M. having qualified as executor of the will of S. and also of that of testator, and rendered his account in the latter capacity, in which he recognized the instrument executed by S. as a transfer to her of the estate of testator, the residuary legatees under the will of the latter, objected that the acts of S. were ineffectual as an appropriation of such estate.—

Held, that the testator could not have intended that the failure of F. and M. to qualify should deprive the chief object of his bounty of the privilege accorded to her by his will; that S., by executing the instrument in question, became invested with title to the property, though M. at the time of its delivery was not executor,—provided she was then of sound mind; that it was not yet too late to determine the question of her competency; and that the entry of a decree upon the accounting should be deferred, to permit such determination to be had.

Hull v. Hull, 24 N. Y., 647—compared.

HEARING of objections interposed by Hannah M. Solomons, claiming to be interested in decedent's estate, to the account of the executor of the will of the latter, in proceedings for judicial settlement. The facts appear in the opinion.

M. A. KURSHEEDT, *executor.*

G. W. LYON, *for objector.*

THE SURROGATE.—The will of this testator designated three persons to execute its provisions. One of those three was the testator's mother, Selina Solomons, who qualified as executrix in April, 1883. At that time she took possession of this estate, and continued to hold it in her exclusive charge until her decease. One of the clauses of the will which she was called upon to execute contained the provision following: "I order that my executors hereinafter named as trustees with and for my said mother shall, at any time, upon my mother's written request . . . . . . pay and deliver to her, in absolute ownership, any part or portion of the principal or capital of the trust estate in their hands, not exceeding one half thereof." This direction the testator subsequently modified by a codicil wherein he empowered his executors to pay over any part or the whole of his estate "in the same way, manner and form" that he had by his will authorized them to adopt in the paying over of one half.

In May, 1883, Selina Solomons executed an instrument, wherein she assumed to exercise the power which is claimed to have been vested in her by her

son's will and codicil, and elected " to take and hold in absolute ownership all the personal estate of said testator, and all proceeds of his real estate, in excess of the amount required to pay his debts and funeral and testamentary expenses and certain monetary legacies, amounting in all to $9,100." She had previously filed an inventory of the assets of the estate wherein she had charged herself as executrix with the sum of $93,047.62. It will not be disputed that, if the provisions in her behalf in the will and codicil of Moses Solomons are valid, and if she could lawfully exercise, and did in fact exercise, the authority conferred by such will and codicil upon his executors, then there were no assets of Moses Solomons' estate at the time of her death, except such sums as might be necessary for satisfying the legacies above referred to, and for the payment of debts and funeral and testamentary expenses.

After the death of Selina Solomons, Manuel A. Kursheedt, who was named as executor in Moses Solomons' will, duly qualified as such, and at the same time qualified as executor of the will of Selina Solomons. He is now accounting under somewhat peculiar circumstances. The claims of persons who are entitled to take under Moses Solomons' will, in case its provisions to Selina Solomons shall for any cause fail to take effect, are in direct antagonism to the claims of those who will take under the will of Selina Solomons, in case such provisions shall be ultimately upheld. The executor has very properly, therefore, cited all persons interested in either of the two estates to attend the judicial settlement of his

account (Fisher v. Banta, 66 *N. Y.*, 481). Upon the
return of the citation, he asked instructions from the
Surrogate as to the proper mode of presenting his
account. The Surrogate, upon objection by counsel
for Hannah M. Solomons, who claims to be interested
in this decedent's estate, declined to give such in-
struction, and held that the executor should, in the
first instance, solve for himself the problem which
confronted him, and should, accordingly as he might
be advised, ignore the pretended operation of this
decedent's will and codicil and the instrument exe-
cuted by Selina Solomons appropriating to herself
the assets of this estate, or should, on the other hand,
treat the testamentary provision of Moses Solomons
and instrument executed by his mother as effecting a
valid transfer of the property to which they related.

After this decision had been rendered, the executor
filed an account wherein he set forth that the only
assets that had come to his hands, as this decedent's
executor, were certain moneys that amounted in the
aggregate to $6,662, and that that entire sum had
been applied by him to the payment of the legacies
which he enumerated. He accordingly charged him-
self with said sum of $6,662 and credited himself
with the same amount. The form of this account is
criticised by counsel for said Hannah M. Solomons,
who moves that it be stricken from the files as incom-
plete and inconsistent on its face.

Upon the oral argument of this motion, I intimated
that there was a seeming variance between certain
statements in the account proper, and other state-
ments in Schedule B. which is appended thereto. Upon

closer examination, however, of the paper as a whole, these statements do not seem to me incongruous. The accounting executor substantially takes the position that the property whose ownership is likely to be the chief subject of controversy, belongs to Selina Solomons' estate. His position in this regard can, of course, be attacked by any persons who may seek to surcharge the account. But to hold, at the very threshold of the accounting, that the executor is bound to surcharge himself with all the assets of this estate that ever came to the hands of Selina Solomons, including such assets as she assumed to appropriate to her own use in pursuance of the authority claimed to have been conferred upon her by the testator's will, would be to determine, in advance of any hearing upon the merits, the most important matter that is likely to arise in the controversy over this account. It seems to me that counsel for Hannah M. Solomons practically asks the court to do the very thing which, under objection of such counsel, the court has already declined to do.

The statutes do not prescribe any special form to be adopted by an executor in making up his account. Of course, every such account should contain a clear and definite statement of the executor's dealings with his testator's estate, so that it can be made the subject of intelligent objections. It is true, as counsel for Hannah M. Solomons says, that ordinarily, where an executor has made an inventory, the natural and orderly mode of accounting is for such executor to charge himself with the amount of such inventory, and with any increase of assets he may have since

received, crediting himself in detail with sums paid out for the discharge of debts, etc., etc., and with any loss or depreciation not occasioned by his own fault. But this course need not always be pursued, and under the circumstances here disclosed may properly enough be departed from.    This executor has as yet filed no inventory, and no application seems to have been made to compel him to file one.    As executor of Moses Solomons, the inventory made by his predecessor in office does not bind him even presumptively; he is only called upon to account for such property as has come to his hands, and for such other, if any there be, as might have come to his hands if he had exercised proper care and diligence in recovering it.

It may appear, in the course of this investigation, that he is justly chargeable with all the assets that belonged to this estate at the testator's death.    But the question, whether or not he is so chargeable, is a question which can in no other way be more promptly or more satisfactorily determined than by trial of issues that can be raised by the interposition of objections to the account as filed.

On June 24th, 1885, the following opinion was filed in the same matter:

THE SURROGATE.—Two testamentary papers, both written by decedent's own hand, have since his death been admitted to probate, as together constituting his

last will and testament.   By the earlier of these two papers, which is dated November 10th, 1881, the testator appoints his mother, Selina Solomons, his executrix, and Frederick A. Kursheedt and Manuel A. Kursheedt his executors.   To such executrix and executors he gives *in trust* his entire residuary estate, real and personal.   He authorizes them to retain the same or to convert it and invest the proceeds, and to pay any part or the whole of all interest, rents and income therefrom, to Selina Solomons during her natural life, " at such times and in such manner and in such sums as she may desire the same."

The will then provides as follows; " And I further order that my executors hereinafter named as trustees with and for my said mother shall, at any time upon my mother's written request (unless declared by her family physician and two other trustworthy doctors to be mentally unsound), pay and deliver to her in absolute ownership any part or portion of the principal or capital of the trust estate in their hands not exceeding one half thereof; and in the event of her becoming physically unable to sign such written request, then such payment is to be made to her on her verbal request, made in the presence of a witness to be chosen by my mother, and the said witness shall sign and give proper receipts for the same."

The will further directs the distribution of the residue of the estate after the death of the testator's mother, and the payment of her debts and funeral expenses.

The codicil is dated November 20th, 1881, ten days after the execution of the will.   It begins with a

preamble, reciting that the testator had empowered his executors, the Messrs. Kursheedt, to deliver or pay over to his mother any part of the principal or capital of the estate, to the extent of one half thereof, "in certain ways, forms and contingencies." It then proceeds in these words: "In view of unforeseen and possible depreciation or loss of any portion of my real and personal estate, and with the intent of insuring my mother ample and luxurious support and maintenance, *or for any other purposes by her desired,* I hereby authorize and empower my aforesaid executors to pay over any part or the whole of my real or personal estate, in the same way, form and manner as stated and directed in my will."

The testator died in February, 1883. His will and codicil were admitted to probate in April following. Selina Solomons at once qualified as executrix, and, four weeks later, executed an instrument in writing in words following:

"To all to whom these presents shall come, greeting: Know ye that I, Selina Solomons, of the city of New York, widow of Lucius Solomons, and sole acting executrix of and trustee under the last will and testament of Moses Solomons deceased, pursuant to the power vested in me by said will and the codicil thereto, do hereby elect to take and hold in absolute ownership all of the personal estate of said testator and all proceeds of his real estate over and above the amount that may be required to pay his debts and funeral expenses and the several legacies bequeathed by the second, third, fourth, fifth and sixth clauses of

said will, said legacies amounting in all to the sum of $9,100.

Dated N. Y., May 6th, 1883.

[Signed]     SELINA SOLOMONS.

In the presence of

ISABEL DE SOLA MENDEZ.

H. L. COHEN."

At the time of the execution of this paper, which was drawn with the knowledge of both Manuel and Frederick Kursheedt, and was delivered to the latter, neither of those gentlemen had qualified as executor of this estate; nor at any time thereafter, while Selina Solomons was alive, did either of them receive or apply for letters. It was not until February, 1884, after her death and after her own will had been admitted to probate, that Manuel A. Kursheedt, who qualified as her executor, qualified also as executor of this testator. In the latter capacity he has filed, for judicial settlement, the account here in controversy. He charges himself with $6,662, being the aggregate amount of the pecuniary legacies satisfied by him, and he credits himself with a like sum expended for their satisfaction.

The testator's nephews, to whom, upon the death of his mother, the "residue and remainder" are given by his will, object to this account, claiming that the execution by Selina Solomons of the instrument above set forth, whereby she assumed to take to herself absolutely the bulk of her deceased son's estate, did not operate as an effectual transfer of that property, and that the accounting party should accordingly be charged therewith.

The testator provided that the request of his mother for "payment and delivery to her in absolute ownership," etc., etc., should be obeyed by the executors *unless*, at the time of making such request, she should be "declared by her family physician and two other trustworthy doctors to be mentally unsound."

The will and codicil of this testator clearly manifest his solicitude for his mother's welfare, and his purpose to provide for her in the most bounteous manner, even though it might involve the devotion of his entire estate to her absolute use and dominion. Her right, however, to secure the possession and ownership of all or part of that estate was made subject to the single condition above specified. In the contingency of her mental unsoundness, it was evidently the testator's purpose that his estate should be held in trust by his executors, and applied in their discretion for his mother's "ample and luxurious support."

But with this limitation, the direction to the executors was imperative. If they had qualified, and if Mrs. Solomons had presented to them her "written request," being at the time of such presentation a person of sound mind, the executors would have possessed no discretionary power to deny it. It is evident that the testator intended that his mother should, in any event, save in the event of her mental incapacity, have the right to take to herself the whole residuary estate, and to enjoy and possess it absolutely.

The testator could not have intended that the death

of the two male executors, or their refusal or neglect to take out letters or to perform their official duties, should operate to deprive the chief object of his bounty of the privilege accorded to her by his will. Under all the circumstances, I think that, by her execution of the instrument heretofore quoted, she became invested with the title of the property to which that instrument relates—with this proviso, that, when it was executed, she was not of unsound mind.

In case any question should now be made respecting her mental condition at that time, an issue of fact will be presented for determination. In this regard, there is a close analogy between the case at bar and that of Hull v. Hull (24 *N. Y.*, 647). The will there construed by the Court of Appeals provided that the character and amount of a legacy, to be paid the testator's son upon his arrival at the age of thirty years, should be ascertained with reference to the son's solvency or insolvency at that period. If, "in the opinion of the executors," he should be then "insolvent and unable to pay all his just debts and liabilities," his full enjoyment of his father's bounty was directed to be postponed. The executors having renounced, letters of administration with the will annexed were issued to the person entitled, who thereupon commenced a suit for the construction of the will. It was insisted that the testator had submitted the determination of the fact of solvency to the personal discretion of the executors, and that, as they had voluntarily renounced, compliance with the testator's directions had become impossible, and the provision in question inoperative.

The court said (WRIGHT, J., pronouncing its opinion): "It may be conceded that, when a matter or thing is to be determined or decided entirely by the personal discretion of one or more parties, and they die or refuse to exercise this discretion, there is no way by which any determination or decision can be made ; but where a direction in a will is that the executors or trustees are to do or to determine upon any particular thing, and a rule is given, based upon facts readily ascertainable in the usual manner of legal determination of facts, then it is not a case of pure personal discretion, and the courts will uphold the will, and order the facts, if disputed, to be determined in the usual way."

The question of Selina Solomons' mental capacity might have arisen for judicial determination in her lifetime, if the Messrs. Kursheedt had qualified as executors, and had refused to comply with her "request." In that case, she could have invoked the authority of the courts, for ascertaining the fact of her competency, and determining her rights under the decedent's will. If, at the time of the execution of the paper here in controversy, she was, in fact, mentally competent to execute it, I am inclined to think that what she did may be regarded as such a substantial compliance with the directions of the testator as to have perfected her title to his whole residuary estate. And if such has not been the effect of her action, I hold that her representative, or the persons interested in her estate, are now at liberty to take steps, as they may be advised, for determining the question of her competency, and for curing any

defect in the execution of the power conferred on her by the will. of this testator.

The entry of a decree upon this accounting will be deferred, until the parties have had reasonable opportunity to avail themselves of the suggestions of this memorandum.